**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW YORK CIVIL LIBERTIES UNION and PAIGELYNNE GONYEA,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY and UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>*Defendants*. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Civil Action No. ______________ |

**PRELIMINARY STATEMENT**

1. This is an action under the Freedom of Information Act seeking the release of records concerning extraordinary efforts by the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") to chill political speech demanding accountability for the killing of Renee Good by ICE Deportation Officer Jonathan Ross.

2. On January 7, 2026 in Minneapolis, Officer Ross shot and killed Good, a 37-year-old mother of three children, a poet, and a United States citizen. The next day, the *Minnesota Star Tribune* identified Ross as the officer who killed her. That same day—January 8, 2026—Paigelynne Gonyea published a post to her Instagram account with a profile photograph of Ross wearing a mask and a caption that read: "BREAKING: The ICE agent who shot and killed Renee Good in broad daylight has been identified as Jonathan Ross by the Minnesota Star Tribune. I think today is a great day for Jonathan to be indicted!"

3. More than five months later, on June 23, 2026, two ICE special agents—David Brodie and Abbi Henry—visited Ms. Gonyea at a polling place in Syracuse, New York, where she was serving as a poll worker. Ms. Gonyea recalls that the agents showed her a copy of her January 8, 2026 post, and presented her with a "WARNING NOTICE" asserting that a post from her Instagram handle "may constitute a violation of Title 18 of the U.S. Code" and requesting that she "promptly remove and/or discontinue" it. The agents asked Ms. Gonyea to sign the notice and to take down the post.

4. She did neither, and the government has no legal basis to demand otherwise: The post is political speech on a matter of vital public concern, protected by the First Amendment.

5. News outlets reported on the incident, noting that the ICE officers had visited Ms. Gonyea and showed her the post calling for Ross to be indicted—a post that contained no home address, personal telephone number, or other personal information. After news outlets reached out to DHS for comment, on June 26, 2026, DHS responded by accusing Ms. Gonyea of having "committed a federal crime." But instead of referring to the post that Ms. Gonyea recalls Special Agents Brodie and Henry showing her, a DHS spokesperson claimed that Ms. Gonyea had disclosed Officer Ross's home address and sent the Associated Press an image that DHS claimed to be a screenshot of a purported post from Ms. Gonyea's account that DHS said contained Ross's home address. The alleged screenshot does not contain a date—only an indication that it was purportedly captured within six hours of the original posting—or any information indicating its authenticity.

6. Ms. Gonyea does not recall making this purported post and, to date, no evidence shows that she ever did. The purported post does not appear on her Instagram account. DHS has not

explained where the screenshot came from, who captured it, when it was captured, or why it surfaced only after the agents' visit had drawn national attention.

7. Plaintiffs, the New York Civil Liberties Union and Ms. Gonyea, submitted a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to DHS and ICE on September 10, 2026, to answer the questions DHS has left open. A copy of that September 10 letter is attached as Exhibit 1. Prompt disclosure of these records is critical to informed public debate about whether federal immigration authorities are using the threat of criminal prosecution—including based on fabricated evidence—to silence criticism of their conduct. The records are also necessary to Ms. Gonyea's ability to understand and answer an accusation of criminality that DHS has publicized about her by name.

8. More than thirty working days have expired since Plaintiffs submitted their September 10, 2026 request to DHS and ICE. To date, neither Defendant has released any responsive records, notwithstanding that some records at issue are indisputably beyond any exemption from disclosure—for example, the responsive records that DHS has already disclosed to national news outlets. Defendants' failure to release these records or otherwise make determinations as to the substance of Plaintiffs' request is in derogation of FOIA's requirement that agencies do so within, at most, thirty working days.

**JURISDICTION AND VENUE**

9. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

10. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1) because Plaintiff New York Civil Liberties Union's principal place of business is in New York, New York, within this district.

## PARTIES

11. Plaintiff New York Civil Liberties Union ("NYCLU") is a non-profit, non-partisan organization with its principal place of business at 125 Broad Street, New York, New York. The NYCLU is the New York State affiliate of the American Civil Liberties Union. NYCLU's mission is to advance civil rights and civil liberties so that all New Yorkers can live with dignity, liberty, justice, and equality, and to defend the unrealized promise of the Bill of Rights and the U.S. and New York State Constitutions. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the NYCLU's work and one of its primary activities. The NYCLU regularly publishes reports, commentary, know-your-rights materials, and other educational publications based on information obtained from the government through public records requests, and makes those materials available to the public at no cost.

12. Plaintiff Paigelynne Gonyea is a United States citizen and a resident of Syracuse, New York. She maintains a public Instagram account, @turndapaigeofficial, with more than 40,000 followers, through which she regularly comments on matters of public concern, including the conduct of federal immigration enforcement officers. Ms. Gonyea is the subject of the records sought by Plaintiffs' request and of DHS's public accusation that she committed a federal crime. She executed a Certification of Identity and Privacy Act waiver, enclosed with Plaintiffs' request, authorizing the release of her records to the NYCLU. *See* Ex. 1 at 12.

13. Defendant United States Department of Homeland Security is a department of the executive branch of the United States government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). The DHS Privacy Office and the DHS Office of Public Affairs, from which Plaintiffs

requested records, are components of DHS. DHS has possession, custody, and control of records responsive to Plaintiffs' request.

14. Defendant United States Immigration and Customs Enforcement is a component of DHS and is an agency within the meaning of 5 U.S.C. § 552(f)(1). ICE's Office of Professional Responsibility, from which Plaintiffs requested records, is a component of ICE. ICE has possession, custody, and control of records responsive to Plaintiffs' request.

## FACTS

### The Killing of Renee Good by ICE Agent Jonathan Ross and Ms. Gonyea's Speech Demanding Accountability for Agent Ross's Misconduct

15. On January 7, 2026, Jonathan Ross, an ICE officer, shot and killed Renee Good.

16. On January 8, 2026, the *Minnesota Star Tribune* published a story identifying Ross as the officer who shot and killed Ms. Good.[1]

17. On January 8, 2026, Ms. Gonyea published a post to her Instagram account, @turndapaigeofficial, consisting of a photograph of an agent wearing a face covering and the caption: "BREAKING: The ICE agent who shot and killed Renee Good in broad daylight has been identified as Jonathan Ross by the Minnesota Star Tribune. I think today is a great day for Jonathan to be indicted!"[2]

18. Ms. Gonyea's January 8, 2026 post did not include Officer Ross's home address, personal telephone number, or any other personal contact information.[3]

---

[1] Liz Sawyer, Andy Mannix & Sarah Nelson, *Star Tribune identifies ICE agent who fatally shot woman in Minneapolis*, Minn. Star Tribune (Jan. 8, 2026), https://www.startribune.com/ice-agent-who-fatally-shot-woman-in-minneapolis-is-identified/601560214 (last visited Oct. 28, 2026).

[2] Instagram, @turndapaigeofficial (Jan. 8, 2026), https://www.instagram.com/p/DTQ1FYDkyua/ (last visited Oct. 28, 2026).

[3] Jude Joffe-Block, *She posted about ICE. Five months later, DHS agents told her to take her post down*, NPR (June 26, 2026), https://www.npr.org/2026/06/26/nx-s1-5871369/new-york-ice-

19. The post is political speech on a matter of vital public concern—a demand that a federal immigration officer be held accountable for killing a United States citizen.

20. Ms. Gonyea's January 8, 2026 post was publicly available at all relevant times and remains publicly available today on her Instagram page.

**DHS Agents Track Ms. Gonyea to a Polling Place and Demand That She Remove Her Post**

21. On Tuesday, June 23, 2026, a person identifying himself as David Brodie, a special agent with DHS, left a voicemail message for Ms. Gonyea.

22. In that voicemail, Special Agent Brodie stated that he had just visited an address he believed to be Ms. Gonyea's apartment, and that he was calling in reference to "a post that we believe you made on Instagram, where you doxxed an ICE agent back in January."[4]

23. Later that day, Special Agent Brodie and a second officer—later identified as Special Agent Abbi Henry—located Ms. Gonyea at the Onondaga County Board of Elections polling location at the Central Library, 447 South Salina Street, Syracuse, New York, where she was serving as a poll worker during the New York State primary election.[5]

24. Contemporaneous video of the incident shows Special Agent Brodie entering the polling place carrying a manila folder.[6]

---

instagram-immigration-dhs-paigelynne-gonyea ("*NPR Article*") (last visited Oct. 28, 2026); Michelle Breidenbach, *Federal agents track down Syracuse woman, demand she remove Instagram post about ICE*, Syracuse.com (June 24, 2026), https://www.syracuse.com/news/2026/06/federal-agents-track-down-syracuse-woman-demand-she-remove-instagram-post-about-ice.html ("*Syracuse.com Article*") (last visited Oct. 28, 2026).

[4] Instagram, @turndapaigeofficial (June 23, 2026), https://www.instagram.com/p/DZ8mvF0tS4t/ (last visited Oct. 28, 2026) (containing audio recording and transcription of voicemail).

[5] NPR Article, *supra* note 3.

[6] Instagram, @turndapaigeofficial (June 23, 2026), https://www.instagram.com/p/DZ8NhH1pfFh/ (last visited Oct. 28, 2026).

25. The video shows Special Agent Brodie placing the folder on the desk in front of Ms. Gonyea and showing her its contents, which included a copy of at least one social media post.[7]

26. Special Agents Brodie and Henry presented Ms. Gonyea with a document titled "WARNING NOTICE."[8]

27. The Warning Notice asserted that the ICE Office of Professional Responsibility ("OPR") "has identified an Instagram post handle TURNDAPAIGEOFFICIAL, which it has reason to be believe [sic] may constitute a violation of Title 18 of the U.S. Code."[9]

28. The Warning Notice further stated: "Accordingly, OPR is requesting that you promptly remove and/or discontinue the aforementioned behavior."[10]

29. The Warning Notice further stated: "OPR has documented the delivery of this Notice to you. Receipt of this Notice will be taken into consideration, should you continue to be involved in any criminal activities described above."[11]

30. The agents asked Ms. Gonyea to sign the Warning Notice.

31. Ms. Gonyea did not sign it and has not signed it.

32. Ms. Gonyea did not delete her January 8, 2026 post and it remains up today.

---

[7] *See NPR Article* and *Syracuse.com Article*, *supra* note 3.

[8] A contemporaneous photograph of the document presented to Ms. Gonyea at the polling place is available at Instagram, @turndapaigeofficial (June 23, 2026), https://www.instagram.com/p/DZ8N92qphOL/ (last visited Oct. 28, 2026).

[9] *Id.*

[10] *Id.*

[11] *Id.*

**DHS Publicly Accuses Ms. Gonyea of a Federal Crime in the Media and Publishes an Alleged Screenshot of a Purported Instagram Post of Unknown Provenance**

33. The ICE agents' visit to Ms. Gonyea and delivery of the "Warning Notice" received national and local press coverage.[12]

34. NPR's coverage of the incident included quotes from an interview with Perry Grossman of the New York Civil Liberties Union.[13]

35. After the initial news reports of the agents' visit were published, NPR reported that "a DHS spokesperson said Gonyea had committed a federal crime by publishing an ICE officer's address online. But DHS has so far not offered evidence to back up that claim."[14]

36. NPR did not identify the DHS spokesperson who provided that statement and did not report receiving a copy of the post to which the spokesperson was referring.[15]

37. After learning of the DHS spokesperson's claim, Ms. Gonyea wrote to NPR: "Where is the address? I literally have looked through my social media carefully and I do not see an address."[16]

---

[12] *See, e.g.*, *NPR Article* and *Syracuse.com Article*, *supra* note 3; Patrick Whittle, *Election Worker Says Federal Officers Confronted Her at Polls Over Social Media Post Criticizing ICE*, Associated Press (June 26, 2026), https://apnews.com/article/ice-poll-worker-syracuse-fa082f8ac25d019e93b526fdef37df6c ("*AP Article*") (last visited Oct. 28, 2026). The *AP Article* was published in numerous outlets.

[13] *NPR Article*, *supra* note 3 ("'Demanding government accountability for the killing of an American citizen is a highly protected form of political speech,' said Perry Grossman of the New York Civil Liberties Union. 'If this is the kind of speech that the administration, that DHS wants to go after, then they are trying to fundamentally redefine the First Amendment and the scope of permissible public debate,' Grossman said. 'And that is wrong. That is ridiculous.'").

[14] *NPR Article*, *supra* note 3.

[15] *Id.*

[16] *Id.*

38. On June 26, 2026, the Associated Press published a statement it had received from Lauren Bis, Assistant Secretary for the DHS Office of Public Affairs. The statement asserted that Ms. Gonyea "committed a federal crime by posting the address of an ICE law enforcement officer online" and that "if you doxx our officers, we will investigate you, and you will be brought to justice."[17]

39. Rather than the January 8, 2026 post that Special Agents Brodie and Henry had shown Ms. Gonyea on June 23, 2026, the Associated Press reported that Assistant Secretary Bis "shared a different social media post from the same one of Gonyea's accounts in which she said Gonyea shared Ross's address. Part of the post was redacted."[18]

40. The purported post that Assistant Secretary Bis provided is captioned "The killer's name is Jonathan Ross of . . ." followed by a redaction bar that Assistant Secretary Bis stated reflected Officer Ross's home address.

41. The Associated Press did not publish the purported post,[19] but provided a copy of it to Ms. Gonyea for her review and comment. A copy of the alleged screenshot of the purported post that the Associated Press sent to Ms. Gonyea is reproduced below:

[17] *AP Article*, *supra* note 12.

[18] *Id.*

[19] *Id.*




42. Ms. Gonyea does not recall ever having made the post that appears in this alleged screenshot.

43. Ms. Gonyea has not received a takedown notice from Instagram for any post that purportedly contains personal information at any time between January 7, 2026, and June 26, 2026.

44. No copy of the purported post has been located on Ms. Gonyea's account or in any archive of it.

45. The image DHS provided to the Associated Press appears to be a screenshot captured from a mobile device rather than a link to a live post or a copy of a post downloaded from Instagram.

46. The image that DHS shared with the Associated Press bears indicia that it was captured within approximately six hours of the purported post—which, if authentic, likely would place its capture on or about January 8, 2026, close in time to the identification of Officer Ross in the press. Yet Ms. Gonyea does not recall that image being among the materials the agents showed her on

June 23, 2026. That image was not shared with NPR in response to their follow-up query. And it was not disclosed to the Associated Press until after extensive reporting was published on the ICE agents' June 23, 2026 encounter with Ms. Gonyea.

47. The authenticity and provenance of the purported post are therefore seriously in question. That question is not academic: DHS has relied on the purported post to assert publicly, and by name, that Ms. Gonyea "committed a federal crime."

48. Both the agents' visit to Ms. Gonyea and DHS's subsequent public conduct are intended to and operate to chill the political speech of Ms. Gonyea and of others who criticize the conduct of federal immigration enforcement officers.

**DHS's Conduct Is Part of a Broader Pattern**

49. On January 8, 2026, the day the *Minnesota Star Tribune* published its story, DHS Assistant Secretary Tricia McLaughlin publicly demanded that the newspaper retract it, stating that the *Star Tribune* "should be absolutely ashamed of themselves for their reckless behavior, and they should delete their story immediately." ICE declined to verify Officer Ross's identity when asked.[20] The Minnesota Star Tribune did not retract its reporting or delete its story, which remains publicly available today.

50. Five months later, DHS made the same demand of a private citizen. The agents who visited Ms. Gonyea asked her to take down a post that identified Officer Ross by name and to sign the "WARNING NOTICE" reciting that her continued "behavior" could bear on future criminal

[20] *See* supra note 1; *see also* Minnesota Public Radio, *Identity of ICE agent who shot Minneapolis woman is confirmed, protests continue* (Jan. 8, 2026), https://www.mprnews.org/story/2026/01/08/minneapolis-protests-continue-after-renee-good-shoot-and-killed-by-ice-agent (last visited Oct. 28, 2026).

liability. In both instances, what DHS sought to suppress was the accurate public identification of the officer who killed Renee Good.

51. The practice DHS employed against Ms. Gonyea is not unique to her.[21] David Streever, another New Yorker appalled by ICE's lawless, violent conduct in Minneapolis, sent an e-mail sharply criticizing Acting ICE Director Todd Lyons in January 2026. The same two agents who visited Ms. Gonyea and presented her with the "WARNING NOTICE" in Syracuse shortly thereafter went to Rochester, where they delivered a virtually identical "WARNING NOTICE" to Mr. Streever's home. *See Streever v. Mullin*, No. 26-2356 (RC), ECF No. 25 at 2–4 (D.D.C. Sept. 15, 2026). As in Ms. Gonyea's case, OPR's "WARNING NOTICE" asserted that the agency "has reason to believe" that Mr. Streever's e-mail criticizing Mr. Lyons "may constitute a violation of Title 18," demanded that Mr. Streever "promptly remove and/or discontinue" it, and warned that "receipt of this Notice will be taken into consideration" should he "continue"—language matching, nearly verbatim, the notice served on Ms. Gonyea. *Compare id.*, *with* ¶¶26–29, *supra*. Mr. Streever sued DHS officials, alleging violations of his First Amendment rights, and brought a motion for a preliminary injunction. The court granted the motion in part, finding Mr. Streever likely to succeed on his claim that the "WARNING NOTICE" unconstitutionally coerced him into abandoning his First Amendment rights, temporarily vacated it, and enjoined the defendants in that action from issuing similar threats against Mr. Streever. *Streever*, No. 26-2356 (RC), ECF No. 25 at 33–34, 37.

---

[21] *See* Jude Joffe-Block, *He sent a harsh email to ICE's top official. 5 months later, federal agents tracked him down*, NPR (July 1, 2026), https://www.npr.org/2026/07/01/nx-s1-5874124/dhs-tracks-ice-critic (last visited Oct. 28, 2026); Landon Mion, *Another New Yorker says officers confronted him after he criticized ICE*, Fox News (July 1, 2026), https://www.foxnews.com/us/another-new-yorker-says-officers-confronted-him-after-he-criticized-ice (last visited Oct. 28, 2026).

52. These efforts to abuse law enforcement authority to chill protected activity are not confined to Ms. Gonyea or Mr. Streever and are a matter of live and pressing public concern.[22]

53. The "WARNING NOTICE" that ICE served on Ms. Gonyea and DHS's public accusations of criminal activity against her are part of a pattern of efforts by this administration to chill the speech of Americans who have been critical of ICE.[23]

54. That any or all of these public actions taken by DHS and ICE against Ms. Gonyea may be based on evidence that those agencies either fabricated themselves or knew or should have known to be fabricated raises a matter of the most urgent public concern.

**The FOIA Request**

55. On September 10, 2026, Plaintiffs submitted a request under FOIA and the Privacy Act to DHS and to ICE, seeking records created from January 7, 2026 to June 28, 2026, falling within the following categories:

(1) All records concerning Special Agent Brodie's and Special Agent Henry's June 23, 2026 visit to Syracuse, New York—including to the address they understood to be Ms. Gonyea's residence and to the Onondaga County Board of Elections polling location at the Central Library—including incident or contact reports, dispatch or assignment records, pre-visit

---

[22] Dani Schulkin, Ryan Goodman & Huzaifa Khan, "*Zero Evidence": How Judges and Grand Juries Have Rejected Trump Administration Efforts to Investigate and Prosecute*, Just Security (July 20, 2026), https://www.justsecurity.org/146665/courts-grand-juries-reject-trump-investigations/ (last visited Oct. 28, 2026).

[23] Jimmy Jenkins & Zoe Tillman, *DOJ Wants to Know Who on Reddit, X Criticizes ICE's Tactics*, Bloomberg Law (May 28, 2026), https://news.bloomberglaw.com/immigration/doj-wants-to-know-who-on-reddit-x-is-criticizing-ices-tactics (last visited Oct. 28, 2026).

planning or briefing materials, and communications among DHS personnel referencing the visit or Ms. Gonyea;

(2) The documents, screenshots, printouts, photographs, and other materials that Special Agents Brodie and Henry showed, displayed, read from, or provided to Ms. Gonyea during the June 23, 2026 visit—including the "Warning Notice" and all social media posts contained in the folder Special Agent Brodie carried—together with the original electronic files from which those copies were generated, with original metadata;

(3) Records sufficient to show the source and history of any social media post from the Instagram account "turndapaigeofficial" that was collected, downloaded, screenshotted, printed, or otherwise captured by ICE before or during the June 23, 2026 visit, including the date and time of each capture and the identity of the person or system that captured it;

(4) All records concerning, supporting, or referencing the purported Instagram post that Assistant Secretary Bis and the DHS Office of Public Affairs shared with the Associated Press on or about June 26, 2026, including records showing who captured or created the purported screenshot and when; all metadata for the purported screenshot and underlying post; any records showing whether the image was edited, composited, or generated in whole or in part using any photo-editing, image-generation, or artificial-intelligence tool; any forensic or digital-authentication analysis of the image; any records showing the original URL of the purported post; and

any records showing whether the purported post ever appeared on the account "turndapaigeofficial" or any other account;

(5) All records reflecting any discussion, review, verification, or request to Instagram to remove content concerning either the account @turndapaigeofficial or any post bearing the caption appearing in the purported screenshot DHS sent to the Associated Press;

(6) All records concerning communications between Assistant Secretary Bis and/or DHS Office of Public Affairs staff and the Associated Press or NPR on or about June 26, 2026, including emails, text messages, social media messages, attachments, drafts, internal approvals, and communications concerning their preparation or transmission;

(7) All records reflecting any instruction, request, or communication directing any person to create, locate, generate, or verify a screenshot or other image of a post from Ms. Gonyea's account or the account "turndapaigeofficial";

(8) All records reflecting or relating to any warning, notice, investigation, inquiry, complaint, or referral by or to ICE's Office of Professional Responsibility concerning Ms. Gonyea, including any records concerning any social media post identifying a federal agent involved in the shooting of Renee Good, and any determination, formal or informal, that Ms. Gonyea's conduct violated or may have violated federal law; and

(9) All records in the custody of, authored by, or received by the DHS Office of Public Affairs—including records in the files of Assistant Secretary Bis and her staff—referencing or relating to Ms. Gonyea, the June 23, 2026

polling place visit, media inquiries concerning the visit, or public statements, talking points, or press guidance prepared in response to press coverage of the visit.

56. Plaintiffs' request enclosed a signed Certification of Identity and Privacy Act waiver executed by Ms. Gonyea, authorizing the release of records about her to the NYCLU. *See* Ex. 1 at 12.

**Agency Responses**

57. To date, Defendants have not released any records in response to Plaintiffs' requests or otherwise provided any substantive response to Plaintiffs' requests.

58. Ordinarily, agencies must make a "determination" as to FOIA requests within twenty working days. 5 U.S.C. § 552(a)(6)(A)(i). FOIA permits agencies to extend this deadline by ten working days in the event of "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). However, agencies must make a determination as to FOIA requests within thirty working days.

59. At a minimum, a "determination" must "indicate within the relevant time period the scope of the documents [the agency] will produce and the exemptions it will claim with respect to any withheld documents." *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 182–83 (D.C. Cir. 2013) (Kavanaugh, J.).

60. An agency must decide whether to grant a request for expedited processing, and notify the requester of that decision, within ten calendar days of receiving the request. 5 U.S.C. § 552(a)(6)(E)(ii)(I); 6 C.F.R. § 5.5(e)(4).

61. A FOIA requester "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with" statutory deadlines. 5 U.S.C. § 552(a)(6)(C)(i).

62. On September 10, 2026, Plaintiffs submitted their request to DHS via FOIA.gov. FOIA.gov issued a confirmation, Submission No. 3167441 (attached as Exhibit 2), stating that the request had been created and was being transmitted to the DHS Privacy Office. On September 29, 2026, DHS acknowledged receipt of the request in a letter attached as Exhibit 3, confirmed that it had been received on September 10, 2026, and assigned it reference number 2026-HQFO-03875. DHS's letter stated that items 1, 2, and 8 of Plaintiffs' request concerned a matter under the purview of ICE and referred those items to ICE's FOIA Office. DHS's letter further stated that, "[c]onsistent with" 6 C.F.R. Part 5, § 5.5(a), DHS "processes FOIA requests according to their order of receipt," and that while DHS's "goal is to respond within 20 business days" of receipt, FOIA "does permit a 10-day extension of this time period in certain circumstances" under 6 C.F.R. Part 5, § 5.5(c). DHS's letter did not identify any circumstance particular to Plaintiffs' request, and did not state that DHS was invoking that extension. DHS has not indicated the scope of documents it will produce or the exemptions it will claim with respect to any withheld documents, and has not ruled on Plaintiffs' requests for expedited processing or a fee waiver.

63. To date, Plaintiffs have received no further response to the request from DHS beyond the communications described in the preceding paragraph.

64. On September 15, 2026, ICE acknowledged receipt of Plaintiffs' request in a letter attached as Exhibit 4, assigned it reference number 2026-ICFO-40889, and denied Plaintiffs' request for expedited processing. ICE stated that Plaintiffs had not shown that the absence of expedited processing would pose an imminent threat to the life or physical safety of any individual, and had not established that Plaintiffs are "primarily engaged in disseminating information" or demonstrated an urgency to inform the public beyond the public's general interest in government activity. ICE further invoked a ten-business-day extension of its determination deadline under 5

U.S.C. § 552(a)(6)(B), citing the volume of records sought and the need for a wide-ranging search. ICE did not indicate the scope of documents it will produce or the exemptions it will claim with respect to any withheld documents, and did not rule on Plaintiffs' fee waiver request. ICE's letter did not state the date on which a determination was expected to be dispatched, as 5 U.S.C. § 552(a)(6)(B)(i) requires; did not state that the request could not be processed within the extended time limit; and did not propose an alternative time frame for processing.

65. To date, Plaintiffs have received no further response to the request from ICE beyond its September 15, 2026 letter described above.

66. Plaintiffs' request was received by DHS and ICE on September 10, 2026. Absent a lawful extension, Defendants were required to make a determination as to Plaintiffs' request no later than October 8, 2026, and were required to rule on Plaintiffs' request for expedited processing no later than September 20, 2026. ICE denied Plaintiffs' request for expedited processing within that period, on September 15, 2026, and invoked a ten-business-day extension of its determination deadline pursuant to 5 U.S.C. § 552(a)(6)(B), extending its outer deadline to October 23, 2026. DHS has neither ruled on Plaintiffs' request for expedited processing nor invoked a lawful extension of its determination deadline, and its October 8, 2026 determination deadline has passed without DHS making the required determination. Although DHS acknowledged receipt of the request and referred a portion of it to ICE on September 29, 2026, that acknowledgment did not indicate the scope of documents DHS will produce or the exemptions it will claim, did not rule on Plaintiffs' request for expedited processing, and did not invoke the extension provision of 5 U.S.C. § 552(a)(6)(B).

67. As of the date of this Complaint, more than thirty working days have elapsed since September 10, 2026, and both DHS's October 8, 2026 determination deadline and ICE's extended

October 23, 2026 determination deadline have passed without either Defendant making the required determination or releasing any responsive records. Plaintiffs are therefore deemed to have exhausted their administrative remedies as to both Defendants. 5 U.S.C. § 552(a)(6)(C)(i).

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Violation of FOIA for Failure to Conduct an Adequate Search, 5 U.S.C. § 552(a)(3)**

(Both Plaintiffs against Defendants)

68. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

69. The failure of Defendants to make a reasonable effort to search for records responsive to Plaintiffs' request violates FOIA, 5 U.S.C. § 552(a)(3), and Defendants' corresponding regulations.

### SECOND CAUSE OF ACTION

**Violation of FOIA for Failure to Make a Timely Determination and to Promptly Produce Records, 5 U.S.C. §§ 552(a)(3)(A), (a)(6)(A)**

(Both Plaintiffs against Defendants)

70. Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

71. The failure of Defendants to make a timely determination on Plaintiffs' request and to promptly make available the records sought by it violates FOIA, 5 U.S.C. §§ 552(a)(3)(A), (a)(6)(A)(i), (a)(6)(B)(i), and Defendants' corresponding regulations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that Defendants' failure to make a timely determination on Plaintiffs' request and to promptly release records responsive to it violates FOIA;

B. Order Defendants to immediately conduct a full, adequate, and thorough search for all responsive records;

C. Order Defendants to immediately process and release any responsive records;

D. Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

E. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

NEW YORK CIVIL LIBERTIES UNION FOUNDATION

/s/ Perry Grossman
Perry Grossman
Claire Molholm
125 Broad Street, 19th Floor
New York, New York 10004
(212) 607-3347
pgrossman@nyclu.org
cmolholm@nyclu.org

*Counsel for Plaintiffs New York Civil Liberties Union and Paigelynne Gonyea*

Dated: October 29, 2026