# EXHIBIT 1

September 10, 2026

Submitted via FOIA.gov and the applicable component FOIA portals

Department of Homeland Security
Roman Jankowski, Chief Privacy Officer and Chief FOIA Officer
DHS Privacy Office, Mail Stop 0655
2707 Martin Luther King Jr. AVE SE
Washington, DC 20528-0655
foia@hq.dhs.gov

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, DC 20536-5009
ICE-FOIA@dhs.gov

**Re: Freedom of Information Act and Privacy Act Request**

To Whom It May Concern:

This is a request for records under the Freedom of Information Act (FOIA) and the Privacy Act. Our clients, the New York Civil Liberties Union and Paigelynne Gonyea (collectively, "Requesters"), seek records concerning acts by the United States Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE") to chill Ms. Gonyea's political speech demanding accountability for an ICE officer, Jonathan Ross, for the killing of Renee Good, including the potential fabrication of evidence by DHS to support baseless—and nationally published—accusations of criminal activity against Ms. Gonyea. A signed Certification of Identity and Privacy Act waiver executed by Ms. Gonyea authorizing release of her records to the NYCLU is enclosed with this request.

**Factual Background**

On Tuesday, June 23, 2026, a person identifying himself as David Brodie, a special agent with the Department of Homeland Security, left a voicemail for Ms. Gonyea. In that voicemail, Mr. Brodie stated he had just visited an address he believed to be Ms. Gonyea's apartment. Special Agent Brodie stated that he was calling in reference to "a post that we believe you made on Instagram, where you doxed [sic] an ice agent back in January." Instagram, @turndapaigeofficial, June 23, 2026, https://www.instagram.com/p/DZ8mvF0tS4t/?hl=en (last visited Aug. 31, 2026). Later that day, Special Agent Brodie and another ICE agent—later identified as Special Agent Abbi Henry—visited Ms. Gonyea at an Onondaga County Board of Elections polling location at Central Library in Syracuse, New York, where she was serving as a poll worker during the New York State primary election. Jude Jaffe-Block, *She posted ICE. Five months later, DHS agents told her to take her post down*, NPR, June 26, 2026, https://www.npr.org/2026/06/26/nx-s1-5871369/new-york-ice-instagram-immigration-dhs-paigelynne-gonyea ("*NPR Article*") (last visited Aug. 31, 2026). Contemporaneous video of the incident at the polling place shows Special Agent Brodie carrying a manila folder with him as he enters the polling place. Instagram, @turndapaigeofficial, June 23, 2026

https://www.instagram.com/p/DZ8NhH1pfFh/?hl=en (last visited Aug. 31, 2026). Special Agent Brodie can be seen placing the manila folder on the desk in front of Ms. Gonyea and showing her its contents, which included a folder with a copy of at least one social media post. *See NPR Article*; Michelle Breidenbach, *Federal agents track down Syracuse woman, demand she remove Instagram post about ICE*, Syracuse.com, June 24, 2026, https://www.syracuse.com/news/2026/06/federal-agents-track-down-syracuse-woman-demand-she-remove-instagram-post-about-ice.html ("*Syracuse.com Article*") (last visited Aug. 31, 2026).

Contemporaneous news reports reflect that among the files identified to Ms. Gonyea was a January 8, 2026 Instagram post from "turndapaigeofficial" with a photograph of an agent wearing a face covering and the caption "BREAKING: The ICE agent who shot and killed Renee Good in broad daylight has been identified as Jonathan Ross by the Minnesota Star Tribune. I think today is a great day for Jonathan to be indicted." *NPR Article*, *Syracuse.com article*. Both contemporaneous news reports stated that Ms. Gonyea did not publish Agent Ross' home address, personal phone number, or other personal information. *Id.* Ms. Gonyea's January 8, 2026 Instagram post was available online at the time of the agents' visit to the Central Library polling place and remains available online now. Instagram, @turndapaigeofficial, Jan. 8, 2026, https://www.instagram.com/p/DTQ1FYDkyua/?utm_source=ig_web_copy_link&igsh=MzRlODBiNWFlZA== (last visited Aug. 31, 2026) And there is no constitutional basis for DHS to insist otherwise: The post is political speech on a matter of vital public concern, indisputably protected by the First Amendment.

Nonetheless, Special Agents Brodie and Henry presented Ms. Gonyea with a document titled "WARNING NOTICE." A contemporaneous photograph of the document that Ms. Gonyea was presented at the polling place is available at Instagram, @turndapaigeofficial, June 23, 2026, https://www.instagram.com/p/DZ8N92qphOL/?hl=en (last visited August 31, 2026). This notice contained the assertion that the ICE Office of Professional Responsibility ("OPR") "has identified an Instagram post handle 'TURNDAPAIGEOFFICIAL', which it has reason to believe may constitute a violation of Title 18 of the U.S. Code." *Id.* The document stated:

> This Notice officially informs you that it is unlawful to threaten to assault, kidnap, and/or murder a federal official or that federal official's immediate family member with the intent to impede, intimidate, and/or interfere with the federal official's duties or retaliate against a federal official due to the performance of their duties. 18 U.S.C. § 115(a). You are further advised that knowingly making restricted personal information about a covered person, or their immediate family member, publicly available with the intent to threaten, intimidate, or incite the commission of a crime of violence against that person; or with the intent and knowledge that the restricted personal information will be used to threaten, or intimidate, or facilitate the commission of a crime of violence against that person violates federal law. 18 U.S.C. § 119. Violation of these or related laws could subject you to both federal and state prosecution.

*Id.* The document further stated: "Accordingly, OPR is requesting that you promptly remove and/or discontinue the aforementioned behavior." *Id.* The document goes on to state "OPR has documented the delivery of this Notice to you. Receipt of this Notice will be taken into consideration, should you continue to be involved in any criminal activities described above." *Id.*

The agents requested that Ms. Gonyea sign the "Warning Notice." Ms. Gonyea did not and has not signed the notice.

After the initial news reports of Special Agent Brodie's and Special Agent Henry's visit with Ms. Gonyea were first published, NPR reported that it received a statement from "a DHS spokesperson [which] said Gonyea had committed a federal crime by publishing an ICE officer's address online. But DHS has not so far offered evidence to back up that claim." *NPR Article*. The *NPR Article* did not identify the DHS spokesperson who had provided the statement or apparently receive a copy of the alleged post to which that spokesperson was referring. After Ms. Gonyea was made aware of this claim by the DHS spokesperson, Ms. Gonyea wrote to NPR, "Where is the address? I literally have looked through my social media carefully and I do not see an address." *NPR Article*.

Providing further details on DHS' claims, the Associated Press reported that it had received a statement from Lauren Bis, Assistant Secretary for the U.S. Department of Homeland Security Office of Public Affairs, which it published in a June 26, 2026 article. Patrick Whittle, *Election Worker Says Federal Officers Confronted Her at Polls Over Social Media Post Criticizing ICE*, Associated Press, June 26, 2026, https://apnews.com/article/ice-poll-worker-syracuse-fa082f8ac25d019e93b526fdef37df6c ("*AP Article*") (last visited Aug. 31, 2026). The statement said that Ms. Gonyea "committed a federal crime by posting the address of an ICE law enforcement officer online" and "if you doxx our officers, we will investigate you, and you will be brought to justice." *Id.* The Associated Press then reported that instead of the post that Ms. Gonyea recalls being shown by Special Agents Brodie and Henry on June 23, 2026, "Bis shared a different social media post from the same one of Gonyea's accounts in which she said Gonyea shared Ross's address. Part of the post was redacted." *Id.* The Associated Press did not publish the purported post that Assistant Secretary Bis shared, but provided a copy of the post to Ms. Gonyea for her review and comment. *Id.* A copy of the alleged screenshot of the purported post that Associated Press received from DHS and shared with Ms. Gonyea is copied below.



Ms. Gonyea did not and does not recall making this post. Ms. Gonyea has not received a takedown notice from Instagram for any post that purportedly contains personal information at any time since January 1, 2026. To date, it does not appear that this purported post—with this photograph and this caption—was ever published on Ms. Gonyea's Instagram account, or anywhere else prior to its disclosure by DHS to the Associated Press. Notably, the image appears to be a purported screenshot of a post from a mobile device, and not a link to a post or a copy of a post downloaded from Instagram directly. And this purported screenshot was supposedly captured within 6 hours of any original post, which presumably would have occurred close in time to news outlets' identification of Agent Ross as the person who shot and killed Ms. Good on or about January 8, 2026. Yet this image was not among the materials the agents showed Ms. Gonyea on June 23, 2026, it was not shared with NPR in response to their follow-up query, and it was not disclosed to the Associated Press until after extensive reporting was published on the ICE agents' June 23, 2026 encounter with Ms. Gonyea.

The authenticity of this purported post and DHS' claims about it are questionable, especially because this purported post has been used to support DHS's outrageous assertion that Ms. Gonyea "committed a federal crime." *AP Article*. Both the ICE agents' visit to Ms. Gonyea and DHS' subsequent conduct are attempts to chill the political speech of Ms. Gonyea and others who have the courage to criticize the rampant, violent abuses of federal immigration officers.

Requesters make the following FOIA request to vindicate the fundamental public interest in protecting the First Amendment right to demand government accountability for unjustifiable law enforcement violence and in evaluating the basis for DHS's published accusations of criminal activity against Ms. Gonyea.

**Records Requested**

We request records created from January 7, 2026 to June 28, 2026, falling within the following categories:

1. All records concerning Special Agents Brodie's and Special Agent Henry's visit to Syracuse, New York on June 23, 2026 related to Ms. Gonyea including but not limited to incident or contact reports, dispatch or assignment records, pre-visit planning or briefing materials, and communications concerning the visit among officers of DHS and its components referencing the visit or Ms. Gonyea.

2. The documents, screenshots, printouts, photographs, or other material that Special Agents Brodie and Henry showed, displayed, read from, or otherwise provided to Ms. Gonyea during the June 23, 2026 visit with Ms. Gonyea. This request seeks copies of both the hard copy documents—including, without limitation, the "Warning Notice" and copies of all social media posts contained in the folder carried by Special Brodie—that agents showed Ms. Gonyea on June 23, 2026 and the original electronic files from which those copies were generated with the original metadata for each file.

3. Records sufficient to show the source and history of any social media post from the Instagram account "turndapaigeofficial" that was collected, downloaded,

screenshotted, printed, or otherwise captured or received by ICE before or during the June 23, 2026 visit, including the date and time each such record was captured and the identity of the person or system that captured it.

4. All records concerning, supporting, or referencing the purported Instagram post that Ms. Bis and the DHS Office of Public Affairs shared with reporters for the Associated Press on or about June 26, 2026—that is, the purported post attributed to the Instagram account "turndapaigeofficial" and captioned "The Killer's name is Jonathan Ross of . . ." followed by a redaction bar that Ms. Bis stated reflected Mr. Ross's home address—including but not limited to:

   (a) Any records showing who captured or created the purported screenshot and when it was made;

   (b) All metadata for the purported screenshot and/or the purported underlying post (including but not limited to file metadata, EXIF data, timestamps, device or application information), and any records showing whether the image was edited, composited, or generated in whole or in part using any photo-editing, image-generation, or artificial-intelligence tool, together with any forensic or digital-authentication analysis performed on the image, whether by DHS or any outside vendor;

   (c) Any records showing the original link (URL) to the purported post, together with any records showing whether the purported post ever appeared, in whole or in part, on the Instagram account "turndapaigeofficial" or any other Instagram account, including archived or cached versions of that account and any records comparing the purported post to the actual, contemporaneous content of Ms. Gonyea's account;

5. All records reflecting any discussion, review, verification, or request to remove from Instagram concerning either (1) any post on the account of @turndapaigeofficial or (2) any Instagram post or repost with the content of the caption in the alleged screenshot of the purported post sent by DHS to the Associated Press on or June 26, 2026 and copied above in this FOIA request letter.

6. All records concerning communications between Ms. Bis and/or the DHS Office of Public Affairs staff and the Associated Press or NPR on or about June 26, 2026 referenced above, including any emails or text messages or social media messages; all attachments; and any internal approvals, or communications concerning its preparation or transmission.

7. All records reflecting any instruction, request, or communication directing any person to create, locate, generate, or verify a screenshot or other image of a post from Ms. Gonyea's account or the Instagram account "turndapaigeofficial," during the relevant time period.

8. All records reflecting or relating to any warning, notice, investigation, inquiry, complaint, or referral by or to ICE's Office of Professional Responsibility concerning Paigelynne Gonyea, including any records concerning any social media post identifying a federal agent involved in the shooting of Renee Good in Minnesota, and any determination, formal or informal, that Ms. Gonyea's conduct violated or may have violated federal law.

9. All records in the custody of, authored by, or received by the DHS Office of Public Affairs — including records in the files of Assistant Secretary Lauren Bis and her staff — referencing or relating to Paigelynne Gonyea, the June 23, 2026 polling place visit, media inquiries concerning the visit, or public statements, talking points, or press guidance prepared in response to press coverage of the visit, to the extent not already encompassed by items 1 through 8 above.

Please provide responsive electronic records electronically, in their native file format. If that is not possible, please provide responsive records electronically in a text-searchable, static image format (PDF), in the best image quality in the agency's possession. Either way, please provide responsive records in separate, Bates-stamped files.

**Request for Expedited Processing**

Requesters seek expedited processing. See 5 U.S.C. § 552(a)(6)(E); see also 6 C.F.R. § 5.5(e). This request satisfies the statutory criteria for expedited processing because it seeks records "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." See 5 U.S.C. § 552(a)(6)(E); see also 6 C.F.R. § 5.5(e).

**A. The NYCLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.**

The NYCLU is "primarily engaged in disseminating information" within the meaning of the statute. *See* id. Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and public are critical and substantial components of the NYCLU's work and are among its primary activities. *See Protect Democracy Project, Inc. v. Dep't of Def.*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017) (ordering expedited processing where information dissemination is an "activity of the requestor" even if not its "sole occupation"); *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (ordering expedited processing for an organization that "disseminates information regarding civil rights and voting rights to educate the public, promote effective civil rights law, and ensure their enforcement"); *ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").

The NYCLU's website, social media, and email lists reach hundreds of thousands of people a month. In addition to these regular channels of information-sharing, the NYCLU

regularly publishes and disseminates reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA and state-law Freedom of Information Law (“FOIL”) requests. 1 See, e.g., NYCLU, Presumed Innocent for a Price: The Impact of Cash Bail Across Eight New York Counties (2018), https://www.nyclu.org/en/node/5258; NYCLU, Taking Cover: How New York Police Departments Resist Transparency (2017), https://www.nyclu.org/en/publications/taking-cover-how-new-york-police-departments-resist-transparency-2017; NYCLU, Justice Derailed: What Raids on Trains and Buses Reveal about Border Patrol’s Interior Enforcement Practices (2011), https://www.nyclu.org/en/publications/report-justice-derailed-what-raids-trains-and-buses-reveal-about-border-patrols (reporting and analyzing the results of a FOIA request for all transportation arrests by Customs and Border Patrol in Rochester Station over three years). NYCLU attorneys are also frequently interviewed for news stories, including about documents released through NYCLU FOIA and FOIL requests.

The NYCLU also publishes information for use by impacted individuals, attorneys, and the public, including “know your rights” materials, fact sheets, and educational brochures and pamphlets about civil liberties issues and government policies that implicate civil rights and liberties. The NYCLU has analyzed the incidents at issue in this request and provided commentary to the news media to inform the public about DHS’s activities with respect to chilling political speech and the rights at stake. *See, e.g.*, *NPR Article*. The NYCLU plans to analyze, publish, and disseminate to the public the information gathered through this request. The records requested are not sought for commercial use, and the NYCLU plans to disseminate the information disclosed through this request to the public at no cost.

**B. The records sought are urgently needed to inform the public about actual or alleged government activity.**

There is a “compelling need” for these records, as defined in the statute, because the information requested is “urgen[tly]” needed “to inform the public concerning actual or alleged Federal Government activity.” 5 U.S.C. § 552(a)(6)(E)(v)(II). Whether a requestor demonstrates urgent need to inform the public turns in part on “(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity.” *Al-Fayed v. C.I.A.*, 254 F.3d 300, 310 (D.C. Cir. 2001). All three factors are satisfied here.

First, the request concerns a matter of current exigency to the American public because the records bear directly on whether DHS and its components are operating within the bounds of federal law in threatening U.S. citizens with criminal prosecution for the political speech critical of violence by federal immigration enforcement officers. DHS has accused Ms. Gonyea in the national press of engaging in conduct that constitutes a federal crime on the basis of her social media activity, which has implications for all Americans engaging in political speech on these same matters of vital public concern.

Second, delaying production would compromise the public's ability to evaluate ongoing and expanding enforcement operations while they are occurring. Violence by federal immigration officers against Americans has been escalating. Other U.S. citizens have also been similarly confronted by ICE officers about their political speech critical of the agency and its officials, indicating that the concerns raised here are widespread and ongoing. *See* Jude Jaffe-Block, *He sent a harsh email to ICE's top official. 5 months later, federal agents tracked him down*, NPR, July 1, 2026, https://www.npr.org/2026/07/01/nx-s1-5874124/dhs-tracks-ice-critic (last visited Aug. 31, 2026); Landon Mion, *Another New Yorker says officers confronted him after he criticized ICE*, Fox News, July 1, 2026, https://www.foxnews.com/us/another-new-yorker-says-officers-confronted-him-after-he-criticized-ice (last visited Aug. 31, 2026).

Ms. Gonyea's request reflects an urgency to inform the public about further actual or alleged federal government activity, that is, (a) the DHS Office of Public Affairs' dissemination to national media of a purported social media post that is the basis of the government's accusation that Ms. Gonyea committed a federal crime by demanding accountability for a federal law officer's killing of a U.S. citizen while engaging in immigration enforcement and (b) whether DHS fabricated a screenshot of a purported post in an effort to substantiate those accusations. These are matters of significant, ongoing media and public interest, as reflected in the news coverage cited above, and directly implicate the speech that DHS apparently considers a basis for criminal prosecution as well as the public's ability to assess the authenticity of evidence provided by federal agency to the press. A delay in processing this request risks compromising the public's right to know about this activity while it remains a live matter of public concern.

And finally, records concerning the actions of ICE and DHS to make threats against Americans for engaging in speech critical of the agencies and their officers indisputably concerns federal government activity.

**Scope of Search**

FOIA requires agencies to disclose information, with only limited exceptions for information that would harm an interest protected by a specific exemption or where disclosure is prohibited by law. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents

that are available within that time period. If all relevant records are not produced within that time period, we are entitled to a waiver of fees for searching and duplicating records under 5 U.S.C. § 552(a)(4)(A)(viii)(I).

**Format and Fee Waiver**

Requesters request a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

The requested records concern identifiable operations and activities of the federal government, i.e., DHS's and ICE's investigation of and confrontation with Ms. Gonyea over her political speech, and DHS's provision of a purported screenshot to national media to substantiate its public accusation that Ms. Gonyea committed a federal crime. *See* 6 C.F.R. § 5.11(k)(2)(i). Disclosure would be meaningfully informative: the materials Special Agents Brodie and Henry showed Ms. Gonyea, the provenance and authenticity of the screenshot DHS provided to the Associated Press, and the basis (if any) for DHS's criminal accusation are not otherwise presently available in the public domain. *See id.* § 5.11(k)(2)(ii). Requesters are seeking these records in the public interest, i.e., to inform public understanding of efforts by federal immigration enforcement agencies to chill speech critical of those agencies and whether those agencies are fabricating evidence to support unfounded accusations of criminal conduct by U.S. citizens who engage in political speech.

The NYCLU also requests a waiver of search fees on the grounds that NYCLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). In determining whether a fee waiver is appropriate, courts consider whether the requester regularly disseminates records obtained through FOIA to "a reasonably broad audience of persons interested in the subject" of its work. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814-15 (2d Cir. 1994). FOIA does not require a requester to describe exactly how it intends to disseminate the information requested, as that would require "pointless specificity"; all that is necessary is for a requester to adequately demonstrate its "ability to publicize disclosed information." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003). In evaluating a fee waiver request, courts consider how a requester actually communicates information collected through FOIA to the public, including press releases or whether the requester has a history of "contacts with any major news[] companies" that suggest an ability to disseminate materials of interest through the press. *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (upholding a denial of a fee waiver to a requester who had failed to identify his relationships with newspaper companies that could disseminate documents).

The NYCLU publishes newsletters, know-your-rights materials, blog posts, and other education and information materials that are broadly circulated to the public. *See, e.g.*, Perry Grossman and Marie Holmes, *The Feds Unleashed a Military-Style Raid on an Upstate Factory. Here's How We Know It Was Illegal*, https://www.nyclu.org/commentary/the-feds-unleashed-a-military-style-raid-on-an-upstatefactory-heres-how-we-know-it-was-illegal. Such material is available to everyone, including not-for-profit groups and impacted individuals, at no cost. The

NYCLU also makes information available without charge through its website. See *EPIC v. Dep't of Def.*, 241 F. Supp. 2d 5, 10–15 (D.D.C. 2003) (disseminating a newsletter via email suffices to show that an organization is a "publisher of a periodical, and therefore falls within [the] definition of a representative of the news media"); *Liberman v. U.S. Dep't of Transp.*, 227 F. Supp. 3d 1, 12 (D.D.C. 2016) ("[I]t is now well-established that online means of distribution . . . can satisfy the statutory requirement that a requester 'distribute [its] work to an audience.'") (internal citations omitted). Courts have found that the ACLU, of which the NYCLU is the New York State affiliate, qualifies as a "representative of the news media" for FOIA purposes. See *Serv. Women's Action Network v. Dep't of Defense*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. Dep't of Justice*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011).[1] The NYCLU meets the same standard for the same reasons.

Furthermore, Ms. Gonyea's Instagram account, "@turndapaigeofficial"—the very account whose posts prompted DHS's visit and are at issue in this request—has over 40,000 followers. Ms. Gonyea independently therefore has an established, direct means of disseminating information about government activity to a broad public audience, and a demonstrated record of doing so: her posts concerning Agent Ross were themselves the catalyst for the coverage by NPR, the Associated Press, and Syracuse.com cited above. *See NPR Article*; *AP Article*; *Syracuse.com Article*. Because Ms. Gonyea has both the intention and the demonstrated capacity to convey the requested records to a broad public audience directly, this factor favors a fee waiver independent of the NYCLU's own capacity to disseminate the records. *See* 6 C.F.R. § 5.11(k)(2)(iii) (agency "shall consider" a requester's "ability and intention to effectively convey information to the public"). Nor is disclosure primarily in Requesters' commercial interest. Requesters seek these records to inform the public about government conduct implicating her own and others' First Amendment rights, not for any commercial or financial purpose. *See id.* § 5.11(k)(3).

We therefore request a waiver of all search, review, and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k). If this request is denied in full or in part, or if any fees will be charged, please contact the undersigned before proceeding. If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $100. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

* * *

Pursuant to applicable statutes and regulations, the NYCLU expects a determination regarding expedited processing within 10 days. See 5 U.S.C. § 552(a)(6)(E)(ii); 6 C.F.R. § 5.5(e)(4). We further expect your reply to the Request itself within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(i).

If the Request is denied in whole or in part, we ask that you justify all withholdings by reference to specific exemptions to the FOIA. We also ask that you release all segregable

[1] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information and public education activities. See, e.g., *Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5 (D.D.C. 2003); *Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); see also *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *Judicial Watch, Inc. v. Dep't of Justice*, 133 F. Supp. 2d at 53–54.

portions of otherwise exempt material. The NYCLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at pgrossman@nyclu.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,

Perry Grossman
Director, Voting Rights Project
New York Civil Liberties Union Foundation

*Counsel for Requesters*
*The NYCLU and Paigelynne Gonyea*

Enclosure: Certification of Identity and Privacy Act Waiver

**U.S Department of Justice**

# Certification of Identity

FORM APPROVED OMB NO.
1103-0016 EXPIRES 05/31/2020

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1] Paigelynne Gonyea

Citizenship Status [2] United States Citizen Social Security Number [3] [redacted]

Current Address [redacted] Syracuse, NY 13204

Date of Birth [redacted] 1985 Place of Birth Syracuse, NY

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

New York Civil Liberties Union, c/o Perry Grossman, 125 Broad Street, 19th Floor, New York, NY 10004

**Print or Type Name**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature [4]** **Date** 08/25/26

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.